## Dover *v.* Twombly.

The office of agent for the purchase and sale of spirituous liquors, is an annual office, and the official bond covers the official year only, although the agent may, by reappointment, or holding over, continue in office longer.

This is an action of debt upon a bond, dated July 13, 1857. The pleas are, first, the general issue; the second sets forth the condition of the bond: viz., "Whereas the

said Twombly has been appointed by the mayor and aldermen of the said city, agent for said city for the purchase and sale of spirituous and intoxicating liquors to be used in the arts, and for mechanical, medicinal and chemical purposes, and wine for the commemoration of the Lord's Supper, and for no other purpose whatever; Now if said Twombly shall well and faithfully perform all the duties of his said office, and in all respects conform to such rules and regulations as said mayor and aldermen shall prescribe, and comply with the requirements of an act for the suppression of intemperance, passed June, 1855," then, &c. The plea alleges performance, and that the said Twombly hath well and faithfully conformed to the rules and regulations prescribed to him by the mayor, &c., and hath well, &c., complied with the requirements of said act, and avers general performance, &c., according to the form and effect of the bond, &c. To this plea there are eight replications. The first replication alleges that Twombly, on the 13th of July, 1857, accepted the agency, and entered into the service of the plaintiffs as agent, and so continued until February 18, 1859, and that Twombly did not comply with the requirements of the act in this, that he did not keep an accurate account of all his sales made during the period aforesaid, specifying the kind, quantity and price of the liquor sold by him, the date of each sale, the name of the purchaser and the use for which the liquor was sold as stated by the purchaser, as by the act he was required to do, &c.

The second, third, fourth, fifth and sixth replications are the same as the first, to and including the general averment of a non-compliance with the requirements of the act.

The second replication further alleges that he did not every year, or at any time within the period aforesaid; during which he was in the service of the plaintiffs as aforesaid, as agent, make to the mayor, &c., a report, verified

by oath or affirmation, of all his purchases and the cost thereof, and of all his sales and the proceeds thereof, specifying the number of sales, the respective quantities and kinds sold for each of the purposes for which he was authorized to sell, and the quantity, kind and cost of all liquors remaining on hand at the date of such report, as by said act, &c., he was required to do, &c.

The third replication further alleges that he did knowingly, during the time he was in the service of the plaintiffs as aforesaid, as such agent, sell a large quantity, to wit, seven hundred gallons of spirituous liquors, the property of the plaintiffs, and which he had received as such agent, for purposes other than those for which he as such agent was by the provisions of said act authorized to sell the same, &c.

The fourth replication further alleges that said Twombly, though often, after the 18th of February, 1859, and before the commencement of this action, and especially on the 2d of June, 1859, by the mayor, &c., requested and required so to do, neglected and refused to account with them regarding all his dealings as such agent, and to exhibit to them all receipts, bills, books and papers of every kind relating to said dealings or to his accounts, as by the said act he was bound to do, &c.

The fifth replication further alleges that said Twombly did not keep an accurate account of all his purchases made during the time he was in the service of the plaintiffs as aforesaid as such agent, specifying in such account the kind, quantity and price of the liquor bought by him, the date of each purchase made by him, and the name of the person of whom such purchase was made, as by the said act he as such agent was required to do.

The sixth replication further alleges that said Twombly, during the time he was in the service of the plaintiffs as aforesaid, as such agent, received, as the proceeds of sales of liquor made by him as such agent, many and divers sums

of money, amounting in all to a large sum, to wit, the sum of $5,000, which, though often, since February 18, 1859, and before the commencement of this action, and especially on the 2d of June, 1859, at, &c., by the mayor, &c., requested and required so to do, he, said Twombly, hath never paid over to the treasurer of the plaintiffs, or in any other way settled or accounted with the plaintiffs therefor, &c.

The seventh replication is the same as the first, to and including the averment of the acceptance of the agency and the length of service, and further alleges that said Twombly did not perform his duty as such agent, in this, to wit, that within and during the time that he, said Twombly, so was and continued in the service of the plaintiffs as such agent as aforesaid, there came into his hands and possession and control as such agent, and for the purposes of his said agency, a large quantity, to wit, four thousand gallons of spirituous liquor, all being the property of the plaintiffs ; and that said Twombly then, during the time of his continuance in the service of the plaintiffs as aforesaid as such agent, converted and applied to his own use and benefit, a large quantity, to wit, seven hundred gallons of said spirituous liquor that so came to his hands and possession, of which he kept no account, and for which he has never in any way accounted or settled with the plaintiffs, nor in any way paid them or their treasurer therefor, though often, since February 18, 1859, and before, &c., and especially on the 2d of June, 1859, by the mayor, &c., requested and required so to do, &c.

The eighth replication is the same as the first, to and including the averment of the acceptance of the agency and the length of service, and further alleges that said Twombly did not perform his duty as such agent, in this, to wit, that he, said Twombly, during the time that he was in the service of the plaintiffs as aforesaid as such agent, carelessly and negligently suffered and permitted a large quantity, to wit, seven hundred gallons of the liquor of

Dover v. Twombly.

said city that came into his hands and possession, for the purposes of his said agency, and all of the value of $1,000, to be wasted, drunk up, consumed and disposed of by divers persons to the plaintiffs unknown, of which he kept no account, and for which he has never settled or paid the plaintiffs.

To all the replications the defendant demurred specially, but with the views we entertain, it is unnecessary to set out the causes assigned beyond what is stated in the opinion.

*C. W. Woodman*, for the defendant.

To the first and second causes of demurrer to all the replications, see *Chelmsford Company* v. *Demarest*, 7 Gray 1; *Beck* v. *Hanscom*, 29 N. H. 213; Pamphlet Laws, ch. 1658, sec. 7; *Bigelow* v. *Bridge*, 8 Mass. 275; Mass. Rev. Stat. (1836) 165, which contain section 1 of the act of 1785, under which Bridge was elected county treasurer: "he shall continue in office one year, and until another shall be chosen and qualified in his stead;" *Lord Arlington* v. *Merricke*, 2 Saund. 403, which is a leading case, and is fully sustained by all the judges in *Liverpool Waterworks* v. *Atkinson*, 6 East 507. See, also, *Commissioners* v. *Greenwood*, 1 Desau. 450; *Ins. Co.* v. *Smith*, 2 Hill (S. C.) 589; *Wardens* v. *Bostock*, 2 N. R. 175; *Hassell* v. *Long*, 2 M. & S. 363; *Peppin* v. *Cooper*, 2 B. & A. 431; *Commonwealth* v. *Hughes*, 10 B. Mon. 160; U. S. Dig. (1851) 76, sec. 16; *Society* v. *Johnson*, 1 McCord 41; 1 U. S. Dig. 437, sec. 103.

*Wiswall*, for the plaintiffs.

1. The terms of the condition of the bond are broad enough to embrace the whole time Twombly acted as agent of the plaintiffs. The bond recites his appointment as agent, &c., and is conditioned for his fidelity in office without limit. As neither Twombly nor any one else was appointed agent in April, 1858, the two sentences of

section 7 of the act of June, 1855, relating to the appointment of agent, taken together, must mean, according to the decisions of this state, that Twombly rightfully and regularly held his office as agent of the plaintiffs until February 18, 1859. If this is not so, the second of said sentences is without meaning. Twombly must rightfully hold his office one year at least, as no one was appointed in his place in April, 1858. It has been held that where the language of the statute is that town officers shall continue in office until the next annual meeting, and until others are chosen and qualified in their stead, the incumbent, in case no successor is chosen at the annual meeting, holds over an indefinite period. Twombly, then, was bound by his bond to faithfully perform the duties of the office; and, if he was bound, his sureties were.

2. As Twombly's sales were made daily, if he did not keep an accurate account of all his sales, as alleged, then breaches of the condition of the bond might happen every day, and a particular day when a breach of the bond was made is matter of evidence. The breach is alleged with sufficient certainty as to time.

3. In each replication it is alleged that Twombly accepted said agency, and entered into the service of the plaintiffs as such agent, &c., and as his bond obligates him to comply with all the requirements of the act of June, 1855, and as said act fully prescribes the duties of said agent, and specifies what kinds of liquor he shall purchase and sell, it must necessarily be inferred that Twombly made sales of spirituous and intoxicating liquors and wines, &c. The defendant, by pleading performance, &c., admits he made sales of spirituous and intoxicating liquors and wine, &c.

BELLOWS, J. This is an action of debt upon a bond against the principal, the said Twombly, and his sureties, given on the 13th day of July, 1857.

Dover *v.* Twombly.

The first plea is the general issue; the second sets forth the condition of the bond which recites the appointment of the said Twombly as agent for the city of Dover, for the purchase and sale of spirituous and intoxicating liquors, &c., and binds him well and faithfully to perform all the duties of his said office, and in all respects to conform to such rules and regulations as the mayor and aldermen should prescribe, and to comply with the requirements of an act for the suppression of intemperance, passed June, 1855; and the plea then alleges a general performance, according to the form and effect of the bond.

To this plea there are eight replications; all alleging that said Twombly, on the 13th day of July, 1857, accepted said agency, and entered into the service of the plaintiffs as such agent, and so continued until February 18, 1859; and all, but the last two, containing the further allegation that the said Twombly did not comply with the requirements of said act, and then proceeding to point out in what respects.

To all these replications the plaintiffs demurred specially, and for causes of demurrer to every replication they assign the following: (1) That the plaintiffs undertake to charge the defendants for matters which took place, if ever, after the period or term for which said Twombly was appointed agent as aforesaid, viz., after April, 1858, and after the term for which the bond was given; (2) It is not alleged that there was any breach of the condition of the bond during the time for which said Twombly was appointed agent, &c., and for which the bond was given.

Upon a careful examination of the several replications, we think that the causes of demurrer above set forth apply to all of them alike; it being assumed by the pleader that the whole period, between July 13, 1857, and February 18, 1859, is to be regarded as the duration of his office, under the appointment of July 13, 1857, or else that subsequent appointments give it the same effect.

In regard to the second replication, we were at first inclined to hesitate, thinking it might be capable of a construction that would amount to an allegation that no report of purchases and sales was ever made to the mayor and aldermen ; but, upon a more careful examination, we think the term, "all his purchases and sales," must apply to all made during the whole time specified, and can not, consistently with the rules of pleading, be regarded as an allegation that he made no such report during the first year of his appointment.

The question then is, whether the whole period, between July 13, 1857, and February 18, 1859, is to be regarded as one and the same, and as covered by the bond. Upon an attentive examination of the statute, and the adjudged cases bearing upon the question, we have arrived at the conclusion that it is not so to be regarded. By the act of June, 1855, ch. 1658, sec. 7, it is provided that the mayor and aldermen of any city, or the selectmen of any town or place, within thirty days after this act shall take effect, and in the month of April annually thereafter, and whenever a vacancy may occur, shall appoint one or more suitable persons, &c., to be agents, &c., for the purchase and sale of spirituous and intoxicating liquors, &c. ; and, after stating for what purposes sales may be made, and conferring the power of removal, the same section provides that every "agent so appointed shall hold his office for one year, or until another is appointed, unless sooner removed." These provisions, as to the term of office, correspond substantially with those in regard to town officers generally, except so far as varied by the mode and time of appointment, and we are of the opinion that the office of such agent must be regarded, like the other town officers, as annual in its character. And this is a matter, being a public statute, of which courts will take judicial notice without its being alleged in pleading. 1 Chit. Pl.

215. So it is directly held in *Leadley* v. *Evans*, 2 Bing. 32; *Peppin* v. *Cooper*, 2 B. & A. 431.

In the case of an annual officer, it is well settled, by adjudged cases in England and the United States, that the sureties upon the official bond are not held for defaults committed after a reëlection. Even where the terms of the condition were broad enough to reach all acts of the officer thereafter committed in that office, and though no limitation of time is stated, yet it is held that the language should be explicit to justify a construction that should give an indefinite extension to the surety's liability, and at the same time give him no power, by notice or otherwise, to terminate it. Where the office is annual, it is to be presumed that the surety contracts for the faithfulness of the officer only during the time for which he is thus appointed; and, if he be retained in the office for a longer period, we think he may safely assume that it is upon the strength of a new bond.

In the case of *Lord Arlington* v. *Merricke*, 2 Saund. 411, the bond recited the appointment of a deputy postmaster for the term of six months following, but bound him to execute its duties faithfully all the time he should continue deputy postmaster at that stage. It was held that the responsibility of the surety existed only for the six months. So it is said by Sergeant Williams, in a note to the last case, that, if a bond be conditioned for the due collection by the officer of taxes, rates or the like, at all times thereafter, yet, if the office is an annual one, a due collection for one year is a compliance with the condition; and to this are cited a number of cases in 2 Saund. 415. In *Liverpool Waterworks* v. *Atkinson*, 6 East 507, the bond recited an agreement by the principal to collect the plaintiff's rents, from time to time, for twelve months; and the condition was, "that if he should, from time to time, and at all times thereafter, during the continuance of such his employment," use all diligence, &c., and, also, if "so long

as he should continue to be employed by the company, from time to time, he should perform the orders," &c. It was held the obligation under the bond extended only to the twelve months.

In *Wardens of St. Saviour's, Southwark,* v. *Bostock,* 5 B. & P. (N. R.) 175, the bond recited the appointment of the principal to be collector of the church rate, but without stating for what period, and the condition was for his accounting for all moneys collected by him upon a rate then referred to, and also on all and every other rate thereafter to be made and collected by him. It was held that the surety was answerable only for the principal in that single appointment, and not for subsequent appointments, it appearing to be an annual office. So is the case of *Hassell* v. *Long,* 2 M. & S. 363. There the condition of the bond extended to the collection of taxes that might thereafter be assessed, and any such assessment being very improbable before the end of the year, it was urged that it might refer to assessments made after the year. The court, Lord *Ellenborough,* C. J., says, that " as the consequences of giving to the condition a more enlarged construction, so as to extend the responsibility beyond the current year, would be of so grievous and burdensome a nature, we think it requires more clear and certain words than are to be found in the instrument." To the same effect is *Leadley* v. *Evans,* 2 Bing. 32; *Pearsall* v. *Summersett,* 4 Taunt. 593. The same doctrine is recognized in *Bigelow* v. *Bridge,* 8 Mass. 275, and *United States* v. *Kirkpatrick,* 9 Wheat. 720; *Dedham Bank* v. *Chickering,* 3 Pick. 335; *Exeter Bank* v. *Rogers,* 7 N. H. 21; *South-Carolina Society* v. *Johnson,* 1 McCord 41; *Moss* v. *State,* 10 Missouri 338. These cases clearly establish the doctrine that a surety is bound for the conduct of the officer during the term to which his then appointment extended, and not beyond.

But it is said that in the case of the town agent, he is

to hold the office until another is chosen, and it is assumed that the replications are to be viewed as stating such a case, inasmuch as they state that he held the office from July 13, 1857, to February 18, 1859. Taking this view to be correct, although it may be urged that the allegations are not inconsistent with the idea of successive appointments, still we are of the opinion that the sureties are not liable for the misconduct of the agent after the expiration of his official year. Not that it is limited to the precise term of one year, but to that period contemplated by the law for the making the new annual choice or appointment, with reasonable time for the qualification of the officer, whether it be at the annual town meeting, in March, which may by necessity be adjourned from time to time, or in the month of April, as in the case of agents of the character now in question. In all these cases it is obvious that to make the new appointment, and qualify the new officer at the expiration of precisely one year, would be impossible; and the provision for holding the office until others are chosen, or chosen and sworn, becomes very convenient, if not indispensable. We are not disposed to think, however, that the provision for holding until another is chosen, can be construed to dispense with the new annual appointment, or to extend it indefinitely. Nor can we hold that the sureties, on entering into this contract, could be presumed to engage for any period beyond the official year.

These views are fully sustained in *Chelmsford Company* v. *Demarest*, 7 Gray 1, and in the *Mayor* v. *Howe*, 2 Harrington, 190, where it is laid down that a surety in the official bond of an officer whose appointment is annual, is not liable beyond the year, though the officer continues by law until a successor is appointed. These cases are clearly in point, and we are satisfied with the reasons assigned, and, therefore, the demurrer must be sustained.

There are many other questions raised by the plead-

ings, which it becomes unnecessary now to decide, and which, if further proceedings are had, will not necessarily arise again.

*Judgment for the defendant.*